☑ Original ☐ D

CLERK'S OFFICE
A TRUE COPY
Oct 28, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) <br> *(Briefly describe the property to be searched* ) <br> *or identify the person by name and address)* ) <br> Records and information associated with the ) <br> Facebook username "Jay Cashing" and ID ) <br> 100068430426356 (See Attachments A & B) ) | Case No. **22-M-594 (SCD)** <br> **Matter No.: 2022R00377** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    11-11-22    *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Stephen C. Dries _____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial) and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    10-28-22 8:55 am    *(signature)*
*Judge's signature*

City and state:    Milwaukee, WI    Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to information associated with the Facebook username "Jay Cashing" and ID 100068430426356 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including the full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers for Facebook Username "Jay Cashing" Facebook User ID 100068430426356.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities from **January 1, 2022**, **to the Present**;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, from **January 1, 2022 to the Present,** including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from **January 1, 2022, to the Present,** including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from **January 1, 2022, to the Present**;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service used by the user;

2

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 922(g)(1) and 922(o) involving James Tanksley including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between James Tanksley and others related to the relevant offense of the sale, use, transfer, and possession of firearms;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

3

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the sale of firearms and sale and use of controlled substances, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Oct 28, 2022
s/JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Records and information associated with the Facebook
username "Jay Cashing" and ID 100068430426356
(See Attachments A & B)

)
)
)
)
)
)

Case No. **22-M-594 (SCD)**

**Matter No.: 2022R00377**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(g)(1) and 922 (o) | Possession, sale, use and transfer of firearms/ammunition; |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Nesrodene Ghassoul, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: _10-28-22_____

_____
*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries , U.S. Magistrate Judge
_____
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Nesrodene Ghassoul, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Incorporated ("Meta"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a Police Officer with the City of Milwaukee Police Department and have been since July 2015.  As of December 2019, I've been assigned and attached as a Federally Deputized Task Force Officer (TFO) with the Federal Bureau of Investigation's Milwaukee Area Safe Streets Task Force.  I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

3.      As a Police Officer and a Task Force Officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of individuals and the seizure of illegal drugs, weapons, United States currency and other evidence of criminal activity.  As a narcotics and illegal firearm possession investigator, I have interviewed many individuals involved in drug and firearm trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution

of controlled substances and firearms. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances and illegal firearm possession. I have participated in all aspects of drug and firearm investigations, including physical surveillance, execution of search warrants, undercover operations, analysis of phones and the arrests of numerous drug and firearms traffickers. I have also been the affiant of many search warrants.

4. Additionally, I have spoken with other experienced narcotics and firearms investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers. Furthermore, I have attended training courses that specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become aware with the methods used by drug and firearm traffickers to manufacture, smuggle, safeguard, and distribute narcotics/firearms, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

5. Based on my training and experience, I know that criminal investigations have been aided by subpoenas, warrants, and court orders related to electronic communication records by providing critical investigative leads and corroborative evidence.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other case agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 922(g)(1) (felon in possession of a firearm) and 922(o) (transfer and possession of machine gun) have been committed by James Tanksley (DOB: XX/XX/1991). There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

8. On Monday, July 25, 2022, case agents were made aware of City of Milwaukee Police Department (MPD) officers patrolling the area of 7600 West Capitol Drive, Milwaukee, Wisconsin for street-level drug dealing. MPD Police Officers (PO) Thomas Kotnik and Jazmin Rowe were operating in a plain clothes capacity in an undercover vehicle in conjunction with a fully marked MPD squad car operated by POs Alexander Dey and Steven Menge. While conducting operations, PO Kotnik observed a silver, 2006 Audi A6 bearing Wisconsin registration plate AMT-7473 park in the parking lot of Walgreens located at 7600 West Capitol Drive, Milwaukee, Wisconsin. PO Kotnik then observed another vehicle, a white Mercedes SUV, park directly next to the driver's side of the Audi. An occupant from the Mercedes proceeded to reach into the driver's window and receive an unknown item.

9. Moments later, the Audi subsequently turned onto West Appleton Avenue. Officers checked the registration plates on the Audi, which revealed a registration suspension for emissions check violation. POs Dey and Menge activated their emergency lights and sirens affixed to their marked MPD squad in an attempt to conduct a traffic stop for the vehicle registration violation.

3

10.     Upon activation of the squad's emergency lights and sirens, the Audi accelerated westbound on West Appleton Avenue at a high rate of speed. The Audi then disregarded a red traffic signal at West Vienna Avenue while traveling approximately 60-70 mph.

11.     During the vehicle pursuit, the Audi reached speeds in excess of 95 mph on city streets, disregarded multiple red traffic signals and stop signs, and traveled in the wrong lane of traffic. Additionally, during the course of the pursuit, the driver, later identified as James Tanksley, discarded an object suspected to be contraband from the driver's window in the 5800 block of North 72nd Street.  Upon observing Tanksley discard suspected contraband, PO Dey notified assisting officers of the discarded object's whereabouts.

12.     PO Rowe was able to respond to the location of the discarded suspected contraband and located a black Glock 23, 40 caliber semi-automatic pistol bearing serial no. BEUH018 in front of 5847 North 72nd Street. Upon officers' further review of the firearm, they observed the firearm was fixed with a selector switch, that when activated renders the firearm fully automatic (machine gun).

13.     During the vehicle pursuit, the Audi conducted a "u-turn" in the area of North 74th Street and West Green Tree Road approximately five (5) feet in front of POs Dey and Menge's vehicle.  PO Menge was able to identify that there was only one (1) occupant in the vehicle, which was the driver, further described as a black male, short haircut with a light or white colored shirt.

14.     The vehicle pursuit came to an end when the Audi struck a utility pole in the alley behind 7701 West Green Tree Road.  The driver and sole occupant (James Tanksley) pushed himself into the front passenger seat after the crash. As PO Menge approached James Tanksley, he observed one multicolored shoe on Tanksley's foot and the matching multicolored shoe on the

4

driver's floorboard near the gas pedal. James Tanksley was then placed into custody without further incident.

15. A search was conducted on the fleeing Audi and during the search Officers recovered a Black and Silver Sprint Kyocera Flip Phone (Model: E4277 SN:A0000027B261D3) and a pink iPhone S Model A1688 (FCC ID: BCG-E2946A) from the main pocket of a black backpack containing identifying documents relating to James Tanksley that was located in the rear driver side passenger seat. Officers also located a red iPhone in a black Nike case that was located on the driver's floorboard. These items were inventoried at MPD District 7 under MPD Inventory No. 22027383, Items 1-3. Officers also located two (2) digital scales, each of which were located in pull-out drawers underneath the driver's and front passenger's seat. In addition to containing one of two scales, the drawer under the front passenger's seat contained a box of clear plastic sandwich bags. From rear passenger seat area, officers recovered a backpack that contained multiple identification cards for James Tanksley.

16. Officers conducted a wanted check which revealed James Tanksley to be on active Federal supervision related to a federal conviction for felon in possession of a firearm. Additionally, Officers checked the Wisconsin Circuit Court Database which revealed James Tanksley to be a convicted felon for Felon in Possession of a Firearm under Milwaukee County Case No. 2013CF4575 which prohibits James Tanksley from possessing any firearms. Said conviction remains of record and unreversed.

17. On or about July 11, 2022, case agents were conducting an ongoing investigation into illegal firearms trafficking of a known target. Case agents reviewed the Facebook account connected to that target, which revealed firearms related communications with a **Facebook Username "Jay Cashing"** and **Facebook User ID 100068430426356**.

5

18.     The Facebook profile "**Jay Cashing**" has since been removed, but prior to the removal, case agents observed multiple main profile pictures depicting an individual identified as James Tanksley.

19.     Case agents were also able to examine the photo albums that have been uploaded to the Facebook account associated with username "**Jay Cashing**" and ID **100068430426356,** and based upon, in part, the photographs contained within the reviewed photo albums, case agents believe this Facebook account is operated and controlled by James Tanksley.

20.     Based upon affiant's training and experience, affiant knows that narcotics and firearms traffickers use websites and third-party applications, such as Facebook, to facilitate narcotics and firearms trafficking.

21.     On July 26, 2022, law enforcement sent a preservation letter to Facebook requesting the preservation of records for Facebook Account "**Jay Cashing.**"

22.     Through prior training and experience of investigating firearms violations, case agents are aware that individuals are known to trade or exchange different types of firearms on a regular basis, often after the commission of a crime, and case agents believe there may be evidence of the individual who provided said firearm(s) to James Tanksley or personal pictures/videos of James Tanksley in possession of the same firearm or additional firearms contained with Tanksley's Facebook account.

## **BACKGROUND CONCERNING FACEBOOK[1]**

23.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

24.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Each Facebook user is assigned a user identification number and can choose a username.

25.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

---

[1] The information in this section is based on information published by Meta on its Facebook website, including, but not limited to, the following webpages: "Privacy Policy," available at https://www.facebook.com/privacy/policy; "Terms of Service," available at https://www.facebook.com/legal/terms; "Help Center," available at https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available at https://www.facebook.com/safety/groups/law/guidelines/.

26.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

27.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

28.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes.  Users can "tag" other users in a photo or video and can be tagged by others.  When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

29.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video.  Meta retains instant messages and certain other shared Messenger content

8

unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

30.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

31.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

32.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

33.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

34.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

35.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

9

36.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform.  For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

37.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

38.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

39.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a

residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses; investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

40. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

41. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant

11

to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

42.     Based on the foregoing, I request that the Court issue the proposed search warrant.

43.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

44.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

45.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook username "Jay Cashing" and ID 100068430426356 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.     Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including the full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers for Facebook Username "Jay Cashing" Facebook User ID 100068430426356.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from **January 1, 2022**, **to the Present**;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, from **January 1, 2022 to the Present,** including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)  All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)  All other records and contents of communications and messages made or received by the user from **January 1, 2022, to the Present,** including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)  All "check ins" and other location information;

(h)  All IP logs, including all records of the IP addresses that logged into the account;

(i)  All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)  All information about the Facebook pages that the account is or was a "fan" of;

(k)  All past and present lists of friends created by the account;

(l)  All records of Facebook searches performed by the account from **January 1, 2022, to the Present**;

(m)  All information about the user's access and use of Facebook Marketplace;

(n)  The types of service used by the user;

2

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 922(g)(1) and 922(o) involving James Tanksley including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)     The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between James Tanksley and others related to the relevant offense of the sale, use, transfer, and possession of firearms;

(b)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

3

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the sale of firearms and sale and use of controlled substances, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b. such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                               Signature